

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

BB:NS
F. #2010R02428

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

December 8, 2011

**By Hand and ECF**

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. Carlos Rosas
            Criminal Docket No. 10-1032 (NGG)

Dear Judge Garaufis:

     On April 20, 2011, the defendant pleaded guilty to Count Four of a five-count indictment, charging him and co-defendant Oswaldo Guillen with dealing in counterfeited currency in violation of 18 U.S.C. § 473.  The defendant is scheduled to be sentenced on December 9, 2011.  The government hereby submits this response to the defendant's sentencing memorandum, dated December 7, 2011, ("Defense Memorandum") seeking a sentence of "no more than 18 months," which is below the applicable advisory United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") range.  The defendant has thus far been in custody for approximately 12 months.

     The government respectfully requests that the Court impose a sentence within the Guidelines range of imprisonment of 21-27 months.

I.    Background

     On June 8, 2010, a cooperating witness and an undercover agent went to the defendant's home in Queens to obtain counterfeit currency.  Pre-Sentence Investigation Report dated August 16, 2011 ("PSR"), ¶ 4.  After a brief discussion with the cooperating witness, the defendant gave the undercover agent $10,000 in counterfeit currency in exchange for $3,000 in genuine currency.  Id.  On November 30, 2010, the cooperating witness again went to the defendant's residence in Queens to purchase counterfeit currency.  Id. ¶ 5.  On that occasion, the cooperating witness received $3,550 in counterfeit currency from the defendant, in exchange for $1,200 in genuine currency.  Id.

The defendant was arrested at his residence on December 2, 2010. Id. ¶ 6.  A search of his home recovered $22,366 in genuine currency and $4,200 in counterfeit currency.  Id.

In post-arrest statements, the defendant told United States Secret Service ("USSS") agents that he received counterfeit currency from two sources: either (1) directly from Peru from a source known to him as "Peru" or (2) through "Peru's" son, an individual known to him as "Peruchio," who resides in New York.  Id.  The defendant stated that he charged his customers 18 cents for each counterfeit dollar and further admitted that, four days prior to his arrest, he sold the cooperating witness $35,000 in counterfeit currency.  Id.

The government conservatively estimates that the defendant sold more than $120,000 in counterfeit currency, id. ¶ 7, an estimate the defendant does not dispute.

## II. The Defendant's Sentencing Arguments

As an initial matter, the defendant argues for the first time in his Sentencing Memorandum, filed a day and a half before his sentencing, that the Guidelines calculation in the PSR is wrong.  See Defense Memorandum at 2-3.[1]  Specifically, he argues that the 2-level increase in the offense level pursuant to U.S.S.G. § 2B5.1(b)(5) is inapplicable because he "did not obtain direct shipments of currency from outside the United States." Defense Memorandum at 2-3.  As described above, however, during his post-arrest interview on December 2, 2010, the defendant did in fact admit to USSS agents that he received counterfeit currency from two sources: either (1) directly from Peru from a source known to him as "Peru" or (2) through "Peru's" son, an individual known to him as "Peruchio," who resides in New York. Indeed, the defendant provided USSS agents with a telephone number for "Peru," with a "51" country code, which corresponds to the country code for Peru, and indicated that he received packages of counterfeit currency from "Peru."  As a result, the government disputes the defendant's new claim that he did not obtain direct shipments of currency from outside the United States.

Nonetheless, the government does not oppose the imposition of a sentence within the Guidelines range calculated without the 2-point enhancement under § 2B5.1(b)(5), as this increase in the offense level was not included in the Guidelines estimate set forth in the plea agreement.  Using an adjusted offense level of 16, with Criminal History Category I, this would

---

[1] The PSR was prepared on August 16, 2011.  The defendant has offered no reason for filing his objections to the PSR well beyond the 14-day time period required by Rule 32(f)(1).

2

result in a Guidelines range of 21 to 27 months. The government respectfully submits that the defendant should receive a sentence within that range.

The defendant argues that the factors set forth in 18 U.S.C. § 3553(a) support a non-Guidelines sentence based on "characteristics," including his lack of a criminal record, upbringing, family circumstances and medical condition. Defense Memorandum at 5. He requests a sentence "not exceeding 18 months" imprisonment. Id. at 6.

The defendant's lack of a criminal record is already reflected in his Criminal History category of I. See PSR ¶ 23. "'When a factor is already included in the calculation of the [G]uidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation.'" United States v. Sindima, 488 F.3d 81, 87 (2d Cir. 2007) (citation omitted, alterations in Sindima). The defendant has not provided specific reasons why this accounting is inadequate. See Defense Memorandum at 5.

With respect to the defendant's medical condition, as the defendant acknowledges, he has been receiving the necessary treatment while incarcerated. See PSR ¶ 36; Defense Memorandum at 5. As such, a departure on this basis is not warranted. See U.S.S.G. § 5H1.4. Nor is a departure warranted based on the defendant's familial obligations. See U.S.S.G. § 5H1.6 (family ties and responsibilities not ordinarily relevant in determining whether departure may be warranted).

Given the government's agreement regarding the two-level adjustment to the defendant's offense level and the three-level adjustment for acceptance of responsibility, a sentence within the range recommended by the Guidelines is sufficient but not greater than necessary to achieve the purposes of sentencing under Section 3553(a).

III.    Conclusion

For the foregoing reasons, the Court should sentence the defendant within the Guidelines range for offense level 16 of 21 to 27 months' imprisonment.

```
                            Respectfully submitted,

                            LORETTA E. LYNCH
                            United States Attorney
                            Eastern District of New York

                    By:        /s/
                            Nadia I. Shihata
                            Assistant U.S. Attorney
                            (718) 254-6295
```

cc:   John Russo, Esq. (via ECF)

4